**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

EMERY CELLI BRINCKERHOFF ABADY
WARD & MAAZEL LLP,

         Plaintiff,

   v.

UNITED STATES CUSTOMS AND
BORDER PROTECTION,

         Defendant.

Civil Action No. 22-02891

**<u>COMPLAINT</u>**

1.　　This is an action brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552, *et seq.*, by Emery Celli Brinckerhoff Abady Ward & Maazel LLP ("Emery Celli"), a law firm based in New York City.  Emery Celli brings this action for injunctive and other appropriate relief, seeking the release of agency records from the United States Customs and Border Protection ("CBP").  Plaintiff seeks records of from CBP regarding the tragic, senseless death of 16-year-old Carlos Gregorio Hernández Vásquez on May 20, 2019, while he was in the custody of the United States.

2.　　Carlos Gregorio Hernández Vásquez was a teenager when he died, lying in his own blood, on the floor of a concrete cell at the CBP Weslaco Station in Weslaco, Texas.  The government had transferred Mr. Vasquez to Weslaco from the McAllen, Texas Centralized Processing Center ("McAllen CPC"), where he had been detained in dangerous conditions for approximately six days after entering the United States.  He died from, *inter alia*, what should have been an easily treatable flu.  The Department of Homeland Security's Office of the Inspector General ("OIG") investigated his death and announced the completion of the investigation and a resulting report on September 15, 2021, via a press release.

3.      Full and public disclosure must occur about what happened to Carlos Gregorio Hernández Vasquez, a beloved son and brother, and why and how he died in the government's custody when he was a healthy young person only a few short days earlier.  At the time of his death, CBP provided certain medical care to migrant detainees such as Mr. Hernández Vásquez pursuant to a contract that CBP had entered into with a private corporation, Loyal Source Government Services ("LSGS").   Plaintiff, which has been retained to investigate this death on behalf of Mr. Hernández Vásquez's family, sent the CBP a FOIA request on January 27, 2022 (the "First Request"), seeking documents relating to the CBP's relationship with LSGS.

4.      CBP effectively rejected the First Request on February 3, 2022, claiming in part that Plaintiff had not provided CBP with a contract number for the contract between CBP and LSGS, and stated that "any responsive records are currently part of an open and pending investigation" and thus "all responsive records are being withheld in their entirety."

5.      Plaintiff wrote to CBP on February 7, 2022, providing the relevant contract number, narrowing our request, and asking for clarity on the scope of the investigation and the basis for withholding basic US government contractual materials.  CBP never responded.

6.      Plaintiff thus filed a second FOIA request with CBP on February 22, 2022 (the "Second Request"), and asked for the narrowed set of documents identified in Plaintiff's February 7, 2022 letter.

7.      CBP never responded.

8.      CBP has wrongfully denied the First Request and failed to respond to the Second Request within the statutory twenty business-day time limit for an agency to respond to a FOIA request.

9.      With this case, Plaintiff seeks to vindicate its rights and the public's rights to government transparency under FOIA.

## JURISDICTION AND VENUE

10.     This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B).  This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

11.     Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) because Plaintiff's principal place of business is in this district.  Venue is also proper in this district under 28 U.S.C. § 1391(e).

12.     Plaintiff is deemed to have exhausted all their administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C) because CBP wrongfully denied Plaintiff's First Request and failed to respond to Plaintiff's Second Request within the statutorily mandated time limit.  5 U.S.C. §§ 552 (a)(6)(C)(i).

## PARTIES

13.     Plaintiff Emery Celli Brinckerhoff Abady Ward & Maazel LLP is a law firm with its principal place of business in New York County, New York.  Carlos Gregorio Hernández Vásquez's family has retained this law firm to investigate the circumstances of Mr. Hernández Vásquez's death.

14.     Defendant Customs and Border Protection ("CBP") is a component department within the United States Department of Homeland Security ("DHS").  CBP has possession and control over some or all of the requested records.

**RELATED ACTIONS**

15.     Plaintiff filed suit against the Department of Homeland Security's Office of the Inspector General ("OIG") in this Court on February 1, 2022, seeking records relating to OIG's investigation into Mr. Hernández Vásquez's death that OIG had failed to produce in response to a FOIA request.  *See Emery Celli Brinckerhoff Abady Ward & Maazel LLP v. United States Department of Homeland Security et al.*, No. 1:22-cv-00873-NRB.

16.     Defendants in that action, DHS and OIG, are represented by the United States Attorneys' Office in the Southern District of New York.

17.     DHS and OIG answered the complaint on March 7, 2022 and produced certain documents responsive to Plaintiff's FOIA request to OIG.

18.     Plaintiff and counsel for DHS and OIG are meeting and conferring regarding the completeness of OIG's response to Plaintiff's FOIA request.

**STATEMENT OF FACTS**

*DHS Facilities Are Notorious For Poor Housing And Medical Conditions*

19.     For the past decade, international organizations, U.S. government agencies, and U.S. courts have warned that DHS facilities are overcrowded with poor sanitation and medical care.  In 2017, Judge Gee of Central District Court of California ordered the U.S. government to remedy these horrific conditions in Border Patrol facilities, including in the Rio Grande Valley. In South Texas facilities, including the McAllen CPC, Judge Gee found that children received insufficient food, inadequate and unclean water, lacked access to hygiene products such as soap to wash hands, and were forced to sleep on concrete floors with only a Mylar aluminum sheet for bedding.  Officers did not give children "soap, toothbrushes, towels, or showers" and kept children in the frigid cold.  *Flores v. Sessions*, 394 F. Supp. 3d 1041, 1058 (C.D. Cal. 2017).

Officials with the Texas Department of State Health Services have warned that conditions in CBP facilities posed a high risk for infectious disease outbreaks. Based on their visits to CBP shelters in the Rio Grande Valley, Texas health and safety officials repeatedly warned that the facilities lacked adequate hygiene and medical care, and put children placed in these facilities at high risk of diseases such as influenza.[1]

20.    During the winter and spring before Mr. Hernández Vásquez's death, several other children died from flu and infection-related illnesses such as sepsis either while in CBP custody, or shortly after their release. On December 18, 2018, the American Academy of Pediatrics and thirteen medical and mental health organizations wrote to DHS that "conditions in CBP custody are inconsistent with evidence-based recommendations for appropriate care and treatment of children and pregnant women and, as such, are not appropriate."[2] Congress received similarly dire warnings  By March 2019, more than 2,000 detained migrants were quarantined for mumps, chicken pox, and influenza-preventable infectious diseases.[3]

21.    Congressional requests for investigation into conditions at CBP facilities and widespread media attention did not seem to improve conditions at these facilities.

22.    At all relevant times, CBP provide certain medical services to migrant detainees at CBP facilities pursuant to a contract with Loyal Source Government Services ("LSGS").

---

[1] Alex Ura, *Texas Health Officials: Immigrant Surge Presents Medical Crisis,* TEX. TRIB. (June 24, 2014), https://www.texastribune.org/2014/06/24/health-officials-docs-raise-concerns-about-immigra/.

[2] Academic Pediatric Association, Letter to U.S. Secretary of Homeland Security, Kirstjen M. Nielson, December 18, 2018, https://downloads.aap.org/DOFA/CBP%20Provider%20Group%20Letter%20Final.pdf.

[3] Sanjana Karanth, *More than 2,000 Migrants in ICE Detention Centers Quarantined for Disease Outbreaks*, HUFFPOST (Mar. 11, 2019), https://www.huffpost.com/entry/ice-detention-centers-migrants-mumps-quarantine_n_5c87210de4b0ed0a00168f59.

***Carlos Vasquez Died in DHS Custody***

23.     Carlos Gregorio Hernández Vásquez arrived at the McAllen CPC on or about May 13, 2019.

24.     The McAllen CPC was widely known as an "ice box" and the "dog pound" because of its frigid temperatures and chain-link cages used to confine migrant adults and children.

25.     The U.S. Government should have held a minor like Mr. Hernández Vásquez at McAllen CPC for no more than 72 hours.  He spent at least six days there.

26.     On information and belief, Mr. Hernández Vásquez was not given a full medical screening on arrival at the McAllen CPC.

27.     On May 19, Mr. Hernández Vásquez was examined by a nurse practitioner who identified at least two symptoms of acute respiratory disease and sepsis: a high fever and high respiratory rate.  He had caught the flu, on information and belief, while in DHS custody at McAllen CPC.

28.     CBP officers at McAllen CPC thereafter failed to regularly check on Mr. Hernández Vásquez's physical condition and allowed his health to further deteriorate.  They did not take him to the hospital.

29.     Later on May 19, CBP transported Mr. Hernández Vásquez to the CBP Weslaco Station.  CBP Weslaco Station is an adult detention facility and, on information and belief, does not have the kinds of dedicated medical facilities that sick people like Mr. Hernández Vásquez needed.

30.     Mr. Hernández Vásquez was placed in a cell with another sick child.  He had to sleep on a concrete bench, with only a mylar blanket.

31.     Nobody at Weslaco Station provided Mr. Hernández Vásquez with the medical care he urgently needed, including, on information and belief, antibiotics, intravenous fluids, and oxygen.  CBP did not take him to the hospital.

32.     Instead, Mr. Hernández Vásquez remained in a concrete box, without bedding, without needed medical care, and without observation.

33.     According to a videotape that was obtained from CBP, at around 1:20 am on May 20, Mr. Hernández Vásquez crawled out from under his Mylar blanket and off the concrete slab onto the floor.  Once on the floor, he writhed for a few minutes, leaving a pool of bodily fluids on the floor.  Finally, he dragged himself into the toilet area of the cell.  He slid down the wall and slumped over.

34.     On information and belief, CBP officers failed to check on Mr. Hernández Vásquez that night.  At 6am, his cellmate woke up and saw Mr. Hernández Vásquez supine against the wall, in a pool of his own blood.  The pool of blood was so large and visible that emergency medical personnel initially thought Mr. Hernández Vásquez had a head wound.

35.     After CBP officers finally checked on Mr. Hernández Vásquez, they pronounced him dead.

36.     In the days that followed, CBP officers posted jokes about the death on a private Facebook group.

37.     In their initial response to Mr. Hernández Vásquez's death, CBP officials made numerous untrue statements about the frequency of welfare checks and other key facts about Mr. Hernández Vásquez's last hours.

38.     Investigative reporting from non-profit groups and news organizations uncovered CBP's coverup.[4]

***The OIG Investigated Mr. Hernández Vásquez's Death***

39.     The Office of the Inspector General of DHS is tasked with auditing and investigating the activities of DHS and its various programs and operations.

40.     OIG completed an investigation into Mr. Hernández Vásquez's death on September 15, 2021.

41.     OIG issued a press release announcing the completion of its investigation.[5]

42.     According to the OIG's press release, the "investigation included witness interviews, a review of USBP [U.S. Border Patrol] records, review of medical records, and an independent contracted medical examiner/child infectious disease expert to review all medical procedures and the autopsy."

43.     "The investigation determined that USBP did not conduct regular and frequent physical checks as required by the Customs and Border Protection National Standards on Transport, Escort, Detention, and Search policy.  The investigation also determined that a BPA [Border Patrol] Team Lead recorded hourly welfare checks that had not actually occurred."

***CBP Failed to Timely Respond to Plaintiff's FOIA Requests***

44.     FOIA "focuses on the citizens' right to be informed about 'what their government is up to,'" by fostering the release of "[o]fficial information that sheds light on an agency's

---

[4] *See, e.g.*, Robert Moore and Susan Schmidt, *Inside the Cell Where a Sick 16-Year-Old Boy Died in Border Patrol Care*, PROPUBLICA (Dec. 5, 2019), https://www.propublica.org/article/inside-the-cell-where-a-sick-16-year-old-boy-died-in-border-patrol-care.

[5] Press Release, "The Office of Inspector General Completes Investigation of Guatemalan Juvenile Who Died in U.S. Border Patrol Custody in Weslaco, TX" (Sept. 15, 2021), https://www.oig.dhs.gov/news/press-releases/2021/09152021/office-inspector-general-completes-investigation-guatemalan-juvenile-who-died-us-border-patrol-custody-weslaco-tx.

performance of its statutory duties." *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 750, 773 (1989) (citation omitted). "[D]isclosure, not secrecy, is the dominant objective" of FOIA. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal quotation marks and citations omitted).

45.    On January 27, 2022, Plaintiff submitted the First Request through CBP's FOIA online portal. A true and correct copy of the First Request confirmation is attached hereto as Exhibit A. This Request was assigned the tracking number CBP-2022-037272.

46.    The First Request sought, *inter alia*, "[a]ll communications between DHS or CBP and LSGS regarding staffing at McAllen, Weslaco, and other border facilities run by or under the control of CBP."

47.    On February 3, 2022, CBP responded to Plaintiff, refusing to produce any documents, including on the basis that there was an unidentified "open and pending investigation."

48.    The OIG investigation into Mr. Hernández Vásquez's death had been completed on September 15, 2021.

49.    CBP also stated that Plaintiff's request for "information on contract services" was "too broad in scope or did not specifically identify the records which you are seeking." CBP informed Plaintiff that it "should include the specific CBP contract numbers of interest" in any request (emphasis in original). It stated that its letter "is not a denial of your request for information on contract services and will not preclude you from filing other requests in the future."

50.    Yet CBP has never produced any such documents, not even in response to "requests in the future."

51.     The letter stated that Plaintiff "may contact CBP's FOIA Public Liaison, Charlyse Hoskins, by sending an email via your FOIA online account, mailing a letter to 90 K St, NE MS 1181, Washington DC, 20229 or by calling 202-325-0150" for further information and assistance with the request.  A true and correct copy of the CBP Letter is attached hereto as Exhibit B.

52.     Plaintiff called 202-325-0150 on February 7, but was unable to speak with anyone.

53.     Plaintiff wrote a letter to Charlyse Hoskins at 90 K St, NE MS 1181, Washington DC, 20229, on February 7, identifying the relevant LSGS contract numbers, narrowing its request otherwise, and asking for further information on the nature of the "open and pending" investigation CBP claimed precluded production.  A true and correct copy of Plaintiff's Letter is attached hereto as Exhibit C.

54.     CBP did not respond.

55.     On February 22, 2022, Plaintiff submitted the Second Request through CBP's FOIA online portal.  A true and correct copy of the Second Request confirmation is attached hereto as Exhibit D.  This Request was assigned the tracking number CBP-2022-046192.

56.     CBP did not responded to the Second Request substantively.

57.     FOIA requires agencies to respond to records requests within twenty business days.  5 U.S.C. § 552(a)(6)(A)(i).

58.     FOIA allows agencies to extend the twenty business days to respond to requests by ten business days if they inform the requester that the agency will be unable to respond within standard time parameters due to "unusual circumstances."  5 U.S.C. § 552(a)(6)(B)(ii).

59.     CBP has never claimed "unusual circumstances" prevent it from responding within twenty days.

60.     The First Request was filed on January 27, 2022.  Twenty business days elapsed on February 25.  Thirty business days elapsed on March 11.

61.     Plaintiff's Letter was sent on February 7, 2022.  Twenty business days elapsed on March 8.  Thirty business days elapsed on March 22.

62.     The Second Request was filed on February 22, 2022.  Twenty business days elapsed on March 22.  Thirty business days elapsed on April 5.

63.     CBP did not respond to the Requests by the applicable deadlines.

64.     Its failure to do so exhausted Plaintiff's administrative remedies, rendering this civil complaint ripe for review.  5 U.S.C. § 552(a)(6)(C)(i).

65.     FOIA requires CBP to release all non-exempt responsive records to Plaintiff.

## FIRST CAUSE OF ACTION
Violation of FOIA for Failure to Timely Release Responsive Records

66.     Plaintiff repeats, realleges, and incorporates the foregoing paragraphs as if set forth herein.

67.     CBP is an agency subject to FOIA, 5 U.S.C. § 552(f), and therefore has an obligation to timely disclose all responsive records not subject to a specific exemption.

68.     Defendant's failures to make available non-exempt responsive records within applicable time limits demonstrates that the Defendant agency constructively denied the Requests in full, in violation of FOIA.  5 U.S.C. § 552(a)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a.     Declare that the records sought by the Requests, as more particularly described above and in Exhibits A and D, are public records pursuant to 5 U.S.C. § 552 and that the records must be disclosed;

11

b.      Order CBP to provide those records to Plaintiff, including electronic copies of

records stored in electronic format, within twenty business days of the Court's

order;

c.      Award Plaintiff the costs of this proceeding, including reasonable attorneys' fees,

as authorized by FOIA; and

d.      Grant Plaintiff such other and further relief as this Court deems just and proper.

Dated: April 7, 2022
       New York, New York

Respectfully submitted,

_____/s/_____
Katherine Rosenfeld
Ananda V. Burra

EMERY CELLI BRINCKERHOFF ABADY
WARD & MAAZEL LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
Tel.: (212) 763-5000
krosenfeld@ecbawm.com
aburra@ecbawm.com

*Attorneys for Plaintiff*